UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

KEITH MOHN, MOHN ASSET
MANAGEMENT, L.L.C., MOHN
FINANCIAL GROUP, L.L.C., J. PATRICK
KISOR, PDK INTERNATIONAL, INC.,
AGAVE, LTD, GENESIS TRADING
ASSOCIATES, L.L.C.,

    Defendants, and

NBC INVESTMENTS, INC., PCM, L.L.C.,
JASON MALKIN, GILBERT HOWARD,

    Relief Defendants.
_____/

Case No. 02-74634

Honorable Patrick J. Duggan

**OPINION AND ORDER:
(1) DENYING PLAINTIFF SEC'S MOTION FOR LEAVE TO AMEND THE
COMPLAINT; (2) GRANTING IN PART AND DENYING IN PART
DEFENDANT KEITH MOHN'S MOTION FOR PARTIAL WAIVER OF
MONETARY PENALTIES AND OFFER OF JUDGMENT; AND (3) GRANTING
IN PART AND DENYING IN PART PLAINTIFF SEC'S MOTION FOR AN
ORDER OF DISGORGEMENT AND CIVIL PENALTIES**

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on September 9, 2005.

    PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                       U.S. DISTRICT COURT JUDGE

The Securities and Exchange Commission ("SEC") filed suit against defendants for their activities from April 1998 through August 2002, during which they raised $34.7 million from investors through the fraudulent offer and sale of unregistered securities. This matter is before the Court on the following motions: (1) SEC's Motion for Leave to Amend the Complaint to Add a Claim for Disgorgement against Defendant Mohn Financial Group, L.L.C.; (2) Defendant Keith Mohn's Motion for Partial Waiver of Monetary Penalties and Offer of Judgment; and (3) SEC's Motion for an Order of Disgorgement and Civil Penalties against Defendants Keith Mohn, Mohn Asset Management, L.L.C., and Mohn Financial Group, L.L.C. On August 4, 2005, this Court heard oral arguments on the motions.

## I. Background

On November 21, 2002, the Securities and Exchange Commission ("SEC") filed a seven-count Complaint against Keith Mohn, Mohn Asset Management Group, L.L.C., Mohn Financial Group, L.L.C., J. Patrick Kisor, PDK International, Inc., Agave, Ltd., and Genesis Trading Associates, L.L.C. ("Defendants"). The Complaint alleges that Defendants fraudulently offered and sold unregistered securities in violation of federal securities laws. Specifically, the Complaint alleges that "between April 1998 and August 2002 the defendants have engaged in a scheme in which they raised at least $34.7 million from investors through the fraudulent offer and sale of unregistered securities." (Compl. ¶ 1). In addition, the Complaint alleges that Defendant Mohn made false representations to investors including, but not limited to, how investors' funds would be used, the performance of the investments, and the risks involved. (Compl. ¶ 34).

2

A. <u>Factual Background</u>

According to the Complaint, from April 1998 through August 2002, Defendant J. Patrick Kisor ("Kisor") raised at least $3.7 million from at least thirty investors by selling unregistered shares of PDK International, Inc. ("PDK"). From September 2000 through January 2002, Kisor and the Mohn Defendants[1] raised investor funds through the offer and sale of unregistered shares of Agave, Ltd. ("Agave"). Additionally, Mohn raised investor funds through the offer and sale of unregistered shares of Genesis Trading Associates, L.L.C. ("Genesis").

The Complaint alleges that as part of a scheme to defraud, Kisor misappropriated investor funds from PDK and Agave and spent the investor funds on personal expenses. When Kisor actually placed PDK and Agave investor funds in investments, millions of investor dollars were used for risky non-options investments. Additionally, the portion of PDK and Agave funds that Kisor used in options trading resulted in overall losses for investors. The SEC contends that during the scheme, Kisor knowingly made the following misrepresentations to investors: (1) that his background included successful options trading; (2) that the funds invested in PDK and Agave would be used to trade options; (3) that PDK and Agave had engaged in successful options trading and had earned profits on their investments; (4) that investor funds would be used in a trading strategy that had "at least doubled the performance of the S&P 500 for the last five years; and (5) overstating the value of PDK's assets.

---

[1] The Mohn Defendants include Mohn, Mohn Asset Management, L.L.C., and Mohn Financial Group, L.L.C.

Defendant Mohn is the sole owner of Mohn Asset Management–an investment advisor. In addition, Mohn was a co-owner of Mohn Financial Group–a financial services company that primarily sells insurance products and refers clients to money managers.

According to the Complaint, Mohn initially repeated Kisor's misrepresentations (listed above) to investors without verifying the accuracy of those statements. In addition, from 2000, Mohn learned that Kisor had misused and misappropriated investor funds and, as a result, had lost at least one-half of the investment value that Kisor, and later Mohn, were reporting to investors. Mohn did not reveal any of this information to investors. Instead, Mohn concealed the information and continued to offer and sell the investments.

According to the Complaint, in 2002, Mohn formed Genesis to continue the operations of Agave by offering investors the opportunity to withdraw from the Agave investment or exchange their Agave shares for Genesis shares. In offering the investments in Genesis to investors, Mohn, through Mohn Asset Management, Mohn Financial Group, and Genesis, knowingly or recklessly falsely represented to investors that the full value of their Agave investments were transferred to Genesis. Mohn used millions of dollars in investor funds for an unsecured loan and for risky non-options investments in 2002. Despite Mohn's knowledge of Kisor's misappropriation and loss of investor funds, Mohn did not disclose the losses to investors. Instead, Mohn mailed Genesis account statements to investors in which he falsely valued their investments.

B. Procedural Background

On April 30, 2004, the Commission moved for summary judgment against the Mohn Defendants (and Relief Defendant Gilbert Howard). Subsequently, the Commission

4

withdrew its motion for summary judgment against the Mohn Defendants in anticipation of the consent of the Mohn Defendants to entry of final judgment against them. On December 27, 2004, the Commission filed the Mohn Defendants' consents to final judgment against them, and on January 11, 2005, the Court entered Final Judgments against the Mohn Defendants, permanently enjoining them from future violations of federal securities laws.

The Final Judgments against the Mohn Defendants provide that the Court will determine whether and to what extent to order disgorgement and civil penalties against the Mohn Defendants at a separate hearing. Under the Final Judgments, at that hearing "allegations of the Commission's Complaint will be taken as true," and the Mohn Defendants "will be precluded from arguing that they did not violate the federal securities laws in the manner set out in the Commission's Complaint."

## II.   SEC's Motion to Amend

On February 22, 2005, Plaintiff SEC filed its Motion for Leave to Amend the Complaint to Add a Claim for Disgorgement against Defendant Mohn Financial Group, L.L.C. ("Motion to Amend"). According to Plaintiff, since filing the Complaint, the SEC has "learned through the discovery process that Mohn Financial Group received ill-gotten gains." (Br. in Supp. of Pl.'s Mot. to Amend at 1). Plaintiff contends that Mohn Financial will not be prejudiced by amendment of the Complaint to include a claim for disgorgement against Mohn Financial.

Plaintiff SEC seeks leave to amend the Complaint pursuant to FED. R. CIV. P. 15(a), which provides, in pertinent part: "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when

5

justice so requires." The Rule was intended to "reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Teft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982). To deny a motion to amend, the district court must find "at least some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986).

Defendant Mohn Financial contends that it will be prejudiced by the proposed leave and amendment because it has already consented to a Final Judgment based upon the original Complaint, which did not include a claim for disgorgement against it. The Court does not believe that Plaintiff SEC should be allowed to amend the Complaint to add a claim for disgorgement against Defendant Mohn Financial unless the Final Judgment to which Mohn Financial consented is vacated. Therefore, Plaintiff SEC's Motion to Amend the Complaint is denied.

### III. SEC's Motion for an Order of Disgorgement and Civil Penalties against Mohn Defendants and Defendant Mohn's Motion for Partial Waiver

On February 4, 2005, Mohn filed his Motion for Partial Waiver of Monetary Penalties and Offer of Judgment ("Motion for Partial Waiver"). In his Motion for Partial Waiver, Mohn claims that he cannot pay any disgorgement or civil penalties other than to formally turn over funds that the Court had previously frozen. Mohn seeks an entry of judgment imposing disgorgement, civil penalties, and/or interest in the amount of $130,000.

On February 22, 2005, the SEC filed its Motion for an Order of Disgorgement and Civil Penalties against the Mohn Defendants ("Motion for Disgorgement"). In its combined Brief in support of its Motion for Disgorgement and in opposition to Mohn's Motion for Partial

6

Waiver, the SEC asks this Court to reject Mohn's proposed monetary sanction and instead: (1) enter an order of disgorgement against the Mohn Defendants, jointly and severally, in the amount of $381,420, plus prejudgment interest of $74,431; and (2) order civil penalties against each of the Mohn Defendants in the amount of $381,420.

### A. Standard of Review

It is well-settled that the equitable remedy of disgorgement is an appropriate method of "depriv[ing] a wrongdoer of his unjust enrichment and . . . deter[ing] others from violating the securities laws." *SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989); *see also SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985) (noting that the Sixth Circuit has required defendants to disgorge "a sum of money equal to all the illegal payments he received"); *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993) (finding that disgorgement is an equitable remedy "meant to prevent the wrongdoer from enriching himself by his wrongs"). "[D]isgorgement need only be a reasonable approximation of profits causally connected to the violation." *First City Fin. Corp., Ltd.*, 890 F.2d at 1231. "Although the SEC bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment," a defendant may come forward with evidence that the disgorgement figure was not a reasonable approximation. *Id.* at 1232.

In addition, in the Securities Act and the Exchange Act, Congress gives the courts discretion to determine the amount of civil penalties to impose. Securities Act, § 20(d), 15 U.S.C. § 77t(d) and Exchange Act, §§ 21(d)(3)(A) and (b), 15 U.S.C. §§ 78u(d)(3)(A) and (B) (upon a "proper showing," the court has jurisdiction to impose civil penalties in an amount "not to exceed" the specified amounts, thereby leaving the amount of the penalty to

7

the discretion of the court).

   B. Discussion

   1. Order of Disgorgement

Plaintiff SEC seeks an order of disgorgement of $381,420, jointly and severally against the Mohn Defendants. According to submissions made by the Mohn Defendants, the SEC has determined:

> [T]he Mohn Defendants received $586,051 from Agave investor funds deposited into the various accounts. Subsequently, the Mohn Defendants loaned $120,000 to Genesis and/or Malkin.[2] In addition, Mohn and Mohn Asset Management indicated that $66,631 of the funds received from Agave were in connection with insurance fees not associated with Agave. Subtracting these amounts from the investor funds received brings the net amount received by the Mohn Defendants to $381,420.

(SEC's Br. in Supp. of Mot. for an Or. of Disgorgement, Ex. 2, Aguilar Aff. ¶ 4 & Ex. A to Aguilar Aff.). The Court concludes that Plaintiff SEC has satisfied its burden of establishing that $381,420 is a reasonable approximation of the amount of unjust enrichment.

Defendant Mohn contends that this Court should consider his inability to pay. In support of his argument, Defendant Mohn cites case law discussing waiver or lower disgorgement orders where the defendant has demonstrated an inability to pay. For example, this Court specifically addressed the issue of a defendant's inability to pay in *SEC v. Johnston*, 922 F. Supp. 1220 (E.D. Mich. 1996), *rev'd on other ground by SEC v. Johnston*, 143 F.3d 260 (6th Cir. 1998). In *Johnston*, the SEC sought injunctive and other equitable relief against defendants for selling unregistered securities. *Id.* at 1221. After defendants

---

[2] Jason Malkin, a relief defendant, is the President of PCM, L.L.C., the entity that previously operated as NCB Investments, Inc. The Complaint alleges that Agave investor funds were used to form NCB Investments, Inc. (First Am. Compl. at ¶¶ 20-22).

8

consented to the entry of a permanent injunction against future violations of the securities laws, *id.* at 1221 n.1, this Court entered an order of disgorgement in the amount of $96,310, or the amount defendants received in commissions from the sale of unregistered securities.

The defendants moved for a waiver of disgorgement based on their inability to pay, arguing that defendants' pension/profit-sharing plan could not be used to satisfy the disgorgement order. *Id.* at 1222. The Court noted that "[i]t is the defendant's burden to prove an inability to pay a disgorgement order by a preponderance of the evidence." *Id.* This Court waived disgorgement concluding that the plan was exempt from disgorgement.[3] *Id.* at 1227.

However, in *Johnston*, this Court had already entered an order of disgorgement equal to the amount of illegal payments the defendants had received. In contrast, in this case, no order of disgorgement has been entered against Defendant Mohn. Instead, Defendant Mohn argues that this Court should consider his inability to pay *before* entering its order of disgorgement. Some courts have considered a defendant's inability to pay when determining the amount of civil penalties to impose or whether to waive civil penalties. *See SEC v. Soroosh*, 166 F.3d 343, 1998 WL 904696, at *2 (9th Cir. Dec. 24, 1998) (imposing a reduced fine because of the defendant's lack of resources); *SEC v. Yun*, 148 F. Supp. 2d 1287, 1297-98 (M.D. Fla. 2001) (ordering disgorgement of $269,000 equaling total amount of ill-gotten gains but, taking into account that defendant was impecunious, imposing only a $100,000 civil penalty against impecunious defendant); *SEC v. Rubin*, 1993 WL 405428, at **6-7

---

[3] On appeal, the Sixth Circuit reversed after finding that the pension plan was not exempt under ERISA. *Johnston*, 143 F.3d 260, 262-63.

9

(S.D.N.Y. Oct. 8, 1993) (ordering disgorgement of profits and commissions earned on improper trades but, taking into account defendants' financial situations when calculating civil penalties).

However, courts have found that a defendant's claim of financial hardship does not provide a defense to a motion for an order of disgorgement. *SEC v. Thorn*, 2002 WL 31412439, at *3 (S.D. Ohio, Sept. 30, 2002) (concluding that the defendant's "current financial net-wroth is irrelevant to the Court's consideration of the disgorgement award"); *SEC v. Robinson*, 2002 WL 1552049, at *8 (S.D.N.Y. July 16, 2002) (collecting cases which rejected financial hardship arguments in assessing disgorgement); *SEC v. Grossman*, 1997 WL 231167, at *10 (S.D.N.Y. May 6, 1997) ("[T]here is no legal support for [the defendant's] assertion that his financial hardship precludes the imposition of an order of disgorgement."). Therefore, the Court will not consider Defendant Mohn's financial situation in determining the appropriate disgorgement.

Alternatively, Defendant Mohn argues that the disgorgement figure of $381,420 is not a reasonable approximation. Mohn contends that, even viewing the allegations in the Complaint as true, the SEC cannot characterize all of the investment advisory fees as "ill-gotten." According to the Complaint:

6) Initially, Mohn repeated Kisor's misrepresentations to investors without conducting sufficient due diligence to determine the accuracy of those statements. The misrepresentations Mohn made included: a) that investor funds in Agave would be used to trade options; b) that Agave had engaged in successful options trading; c) that investor funds in Agave would be used in a trading strategy that had "at least doubled the performance of the S&P 500 for the last five years"; and d) that the trading strategy was low risk.

7) From at least late 2000 and at various times later in the scheme, Mohn learned

10

> that Kisor had used investor funds as described in Paragraph 5 above and as a result had lost at least one-half of the investment value that Kisor, and later Mohn, were reporting to investors. Mohn did not reveal any of this information to investors. Instead, Mohn concealed the information and continued to offer and sell the investments.
>
> * * *
>
> 34) Initially, Mohn recklessly relayed Kisor's misrepresentations about the Agave Offering to investors without conducting sufficient investigation to determine whether the representations were accurate. Later Mohn knowingly made misrepresentations and omissions because he learned from Kisor and other sources that Kisor's representations were untrue but continued to make the representations to investors. Mohn did not disclose to investors what he learned about Kisor's actions.

(Compl. ¶¶ 6, 34).

Defendant Mohn contends that these paragraphs allege, at most, negligent conduct until late 2000 when Mohn acted "knowingly." Mohn contends that no portion of the investment advisory fees he earned prior to this date can be deemed "ill-gotten." Thus, Mohn argues that he lacked the scienter required for a disgorgement order before late 2000.

"[S]cienter is an element of a violation of § 10(b) and Rule 10b-5, regardless of the identity of the plaintiff or the nature of relief sought." *Aaron v. SEC*, 446 U.S. 680, 691, 100 S. Ct. 1945, 1952-53 (1980). Scienter may be established by a showing of recklessness. *Mansbach v. Prescott, Ball & Turven*, 598 F.2d 1017, 1023 (6th Cir. 1979). The Sixth Circuit has defined recklessness as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Id.* at 1025.

In this case, under the Final Judgments the Mohn Defendants are "precluded from arguing that they did not violate the federal securities laws in the manner set out in the Commission's Complaint." (Mohn Defendants' Final Judgments, Sec. VIII). The Complaint

11

alleges that "[i]nitially, Mohn recklessly relayed Kisor's misrepresentations about the Agave Offering to investors . . . ." (Compl. ¶ 34). Therefore, the Complaint alleges that Defendant Mohn acted "recklessly" before late 2000 and "knowingly" thereafter. Bearing in mind that disgorgement is meant to "deprive a wrongdoer of his unjust enrichment and . . . deter others from violating the securities laws," *SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989), the Court is satisfied that the funds Mohn received through his "reckless" conduct warrant disgorgement.

In addition, in calculating the appropriate disgorgement amount, "[p]laintiff is not required to trace every dollar of proceeds misappropriated by the defendants . . . nor is plaintiff required to identify misappropriated monies which have been commingled by them." *SEC v. Great Lakes Equities Co.*, 775 F. Supp. 211, 214 n.21 (E.D. Mich. 1991). "Moreover, all doubts concerning the determination of disgorgement are to be resolved against the defrauding party." *Id.* at 14 (internal quotation omitted). "[S]ince calculating disgorgement may at times be a near-impossible task, the risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.* at 14 n.21. Accordingly, the SEC's motion for an award of disgorgement in the amount of $381,420, jointly and severally against the Defendants Mohn and Mohn Asset Management, is granted.

2. Prejudgment Interest

Plaintiff SEC also seeks prejudgment interest of $74,431, jointly and severally against the Mohn Defendants. "The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion." *Endico Potatoes, Inc. v. CIT*

12

*Group/Factoring, Inc.*, 67 F.3d 1063, 1071-72 (2d Cir. 1995) (internal quotation omitted). In deciding whether an award of prejudgment interest is warranted, a court should consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co. v. Local Union No. 3*, 955 F.2d 831, 833-34 (2d Cir. 1992).

In this case, Plaintiff SEC estimates that investors lost a total of approximately $17.7 million as a result of the Mohn Defendants' fraudulent scheme. (SEC's Br. in Supp. of Mot. for an Or. of Disgorgement, Ex. 2, Aguilar Aff. ¶ 9 & Ex. C to Aguilar Aff.). The SEC calculated the amount of prejudgment interest that accrued from April 2001 through January 2005 on the $381,420 received by the Mohn Defendants "by applying the interest rate, adjusted quarterly, used by the Internal Revenue Service for computation of interest on underpayment of taxes as required by the SEC Rules of Practice § 201.600(b). The total amount of prejudgment interest accrued totals $74,431." (Aguilar Aff. ¶ 6 & Ex. B to Aguilar Aff.).

The time frame for the imposition of prejudgment interest usually begins with the date of the unlawful gain and ends at the entry of judgment. *See First Jersey Sec., Inc.*, 101 F.3d 1450, 1477 (2d Cir. 1996). In this case, Plaintiff SEC calculates the prejudgment interest from April 1, 2001 through January 31, 2005. (Ex. B to Aguilar Aff.). However, the date of the entry of judgment in this case was January 11, 2005.

Plaintiff SEC calculates the prejudgment interest using the equation:

13

$$T = P(1 + (K/M))^{(M*N)}$$

*T* = the total amount Plaintiff is owed after a certain time period

*P* = the initial principal that carries over from the previous time period

*K* = the annual interest rate

*M* = the number of times per year that the interest is compounded

*N* = the period length in years

For Plaintiff SEC's calculations on prejudgment interest, which are correct up until January 1, 2005, *M* was always equal to 4 since the interest was compounded four times per year and *N* was always equal to 0.25 since the time period was always one-quarter of a year. Only the values of *K* and *P* changed.

However, for the last calculation, *N* will be .03 instead of 0.25 since 11 days is only three percent of a year and not one-quarter. The interest is still compounded four times per year so *M* will still be equal to 4. The interest rate for January 2005 is five percent. The principal or carry-over from December 2004 is $453,959. Therefore, based on the revised calculation, the total amount owed Plaintiff is $454,639 instead of the $455,851 calculated by Plaintiff SEC. The interest for the 11 days in January 2005 amounts to $680 instead of $1,891. Accordingly, the Court concludes that prejudgment interest in the amount of $73,219 is appropriate.

  3. Civil Penalties

Finally, Plaintiff SEC seeks a "third-tier" civil penalty in an amount equal to the Mohn Defendants' ill-gotten gains, or $381,420, from each of the Mohn Defendants. A "third-tier"

penalty under the federal securities laws is imposed when the defendants' conduct involved "fraud, deceit, manipulation or a deliberate or reckless disregard of a regulatory requirement [and] directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3). For violations occurring after February 1, 2001, the maximum penalty for each such violation for individuals is the greater of $120,000 or the gross amount of pecuniary gain to the individual resulting from the violation. 15 U.S.C. § 78u(d)(3)(B)(iii); 17 C.F.R. § 201.1002. For entities, the maximum penalty for each such violation is the greater of $600,000 or the gross amount of pecuniary gain to the entity resulting from the violation. *Id.*

A court may consider a number of factors in determining the appropriate amount of a civil penalty, including "the egregiousness of the violations, the isolated or repeated nature of the violations, the degree of scienter involved, the deterrent effect given the defendant's financial worth, and other penalties arising from the conduct." *SEC v. Yun*, 148 F. Supp. 2d 1287, 1295 (M.D. Fla. 2001) (citations omitted). Here, Plaintiff SEC argues that third-tier civil penalties are appropriate because the Mohn Defendants' violations involved fraud, deceit, manipulation, and/or deliberate reckless disregard of a regulatory requirement. In addition, the violations raised approximately $31 million from over a hundred investors and resulted in approximately $17.7 million in investor losses. Moreover, considering the large amount of unjust enrichment in this case, $381,420, a penalty proportional to the amount of harm is appropriate.[4]

---

[4] At the hearing, it was brought to the Court's attention that Defendant Mohn is a recidivist violator of securities laws. *See In re Keith Mohn*, 1999 WL 1036827 (S.E.C. Release No. 34-42144) (reducing $52,222 fine imposed by National Association of Securities Dealers

15

On the other hand, Mohn contends that the following factors should weigh in Mohn's favor in calculating the amount of civil penalties: (1) between January and October 2002, Mohn personally advanced $167,981 to and for the benefit of the investors and Genesis ($120,000 in loans to Genesis and $47,981 in attorney fees that Mohn paid to recoup the investors' assets in Agave), (Mohn's Br. in Supp. of Mot. For Partial Waiver at 6, 17); and (2) after this action was filed, Mohn made repeated attempts to have a receiver appointed to collect and distribute assets to investors–incurring an additional $33,657.44 in attorneys fees as a result of these efforts, (Mohn Supplemental Br., Ex. A, Mohn Aff.).[5]  In light of these contributions, and taking into consideration the fact that Mohn the SEC's Complaint merely alleges that Mohn acted "recklessly" until late 2000 when Mohn acted "knowingly," the Court believes that it would be appropriate to reduce the amount of civil penalties.

This Court, must also consider Defendant Mohn's statement that he is impecunious. According to Mohn, "his total assets exceed his total liabilities by [approximately] $3,700, and his monthly expenditures exceed his monthly income." (Mohn Br. in Supp. of Mot. for Partial Waiver at 6; *see also id.* at 17-18 (subtracting Mohn's total assets from his total liabilities for a result of negative $3707)).  In support of Mohn's calculations, Mohn includes lists of his material assets and liabilities.  (*Id.* at 17-18).

The SEC contends that instead of showing that Mohn is impecunious, Mohn's Motion

---

(NASD) for violating NASD rules of conduct to $2,222).

[5] Plaintiff SEC has filed a Motion to Strike Mohn's Supplemental Submission, contending that the supplemental brief is not allowed by this Court's local rules after a hearing has already been held.  Because the Court believes that Mohn's Supplemental Brief is helpful in resolving the pending motions, the Court will accept Mohn's Supplemental Brief.  Therefore, Plaintiff SEC's Motion to Strike is denied.

16

for Partial Waiver reveals that Mohn is a wealthy man with substantial yearly income living a luxurious lifestyle. The SEC lists the following assets in support of its argument: (1) Mohn's homes; (2) Mohn's interests in two time-share vacation homes; (3) Mohn's luxury car leases; (4) Mohn's country club membership; and (5) Mohn's annual income was $423,529 in 2000, $896,754 in 2001, $799,743 in 2002, and $430,804 in 2004.[6] (*See* Br. in Supp. of Mot. for Disgorgement at 4-5). In addition, the SEC contends that any liabilities Mohn has incurred arise from his extravagant lifestyle. *See, e.g.*, *SEC v. Showalter*, 227 F. Supp. 2d 110, 122 (D.D.C. 2002) (rejecting claim of inability to pay where defendant lived extravagant lifestyle); *SEC v. Custable*, 1999 WL 92260, at *4 (N.D. Ill. Feb. 11, 1999) ("Custable owns both a house and car, and he has not adequately explained why neither of these assets could be used to satisfy judgment in this case.").

Mohn argues that his homes should not be included in calculating his assets because Mohn and his wife hold Mohn's home and his former home as tenants by the entireties. When these homes are excluded from the calculation, Mohn contends that his total liabilities exceed his total assets by approximately $1.5 million. (Mohn Br. in Supp. of Mot. for Partial Waiver at 14). Because Mohn and his wife hold Mohn's home and his former home as tenants by the entireties, Mohn contends that the these homes are exempt from collection. (Mohn Br. in Supp. Mot. for Partial Waiver, Exs. N9 and N10).

In support of this assertion, Mohn cites to bankruptcy case law recognizing a that property held by the entireties is exempt from claims of the creditors of one spouse. *See,*

---

[6] According to the SEC, Mohn did not disclose his 2003 income. (Br. in Supp. of Mot. for Disgorgement at 5 n.2).

17

*e.g.*, *SNB Bank and Trust v. Kensey*, 145 Mich. App. 765, 776-77 (1985) (finding that, in Michigan, real property held as tenants by the entireties is not subject to the claims of the creditors of one spouse). However, the issue in this case is whether Mohn can support his claim that he is impecunious, and thus, should not be assessed civil penalties. Therefore, even though these homes, under Michigan law, could not be seized by a creditor of one spouse in a bankruptcy proceeding, the Court may still consider them as assets in assessing Mohn's wealth. Thus, Mohn's total assets (including his homes) amount to $1,755,147 and his total liabilities amount to $1,778,854. As a result, this Court concludes that Mohn's liabilities exceed his assets by $3,707.

Courts have also considered a defendant's uncertain or speculative future income potential as a factor in determining whether to waive civil penalties. For example, *SEC v. Rubin*, 1993 WL 405428 (S.D.N.Y. Oct. 8, 1993), the court noted that the permanent injunction barring a defendant from a career in the securities industry would have an "ongoing effect." *Rubin*, 1993 WL 405428, at *6. Mohn contends that any future earning potential he may have is uncertain and speculative. Mohn contends that 93% of his total income over the past year was from investment advisory fees, insurance fees, and insurance commissions. As a result of the Final Judgment, Mohn has been permanently barred from the securities industry and will no longer be able to earn any investment advisory fees. In addition, Mohn contends that the State of Michigan will seek to revoke Mohn's insurance licenses as a result of the outcome of this proceeding.[7] Thus, Mohn will likely lose his ability

---

[7] After the SEC filed its Complaint, the Office of Financial and Insurance Services (OFIS) of the Michigan Department of Consumer and Industry Services commenced an administrative proceeding against Mohn seeking to revoke Mohn's investment advisor

18

to earn any insurance-related income.

In light of the this Court's finding that Mohn's total liabilities exceed his total assets by $3,707, and the fact that this Court has already ordered that Mohn is to be jointly and severally liable for the disgorgement of the $381,420 in ill-gotten gains, plus prejudgment interest of $73,219, in this Court's opinion, it is unlikely that the SEC will be able to collect any civil penalties. Consequently, in the interests of judicial economy, rather than assessing civil penalties against the Mohn Defendants, and waiting for them to seek a waiver, the Court believes that civil penalties against Defendants Mohn, Mohn Asset Management, and Mohn Financial should be waived.

Accordingly,

**IT IS ORDERED** that Plaintiff Securities and Exchange Commission's Motion for Leave to Amend the Complaint to Add a Claim for Disgorgement against Defendant Mohn Financial Group, L.L.C. is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Keith Mohn's Motion for Partial Waiver is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** Plaintiff Securities and Exchange Commission's Motion for an Order of Disgorgement and Civil Penalties Against the Mohn Defendants is **GRANTED IN PART AND DENIED IN PART**.

---

registration and insurance licenses. The OFIS Complaint was dismissed without prejudice based on procedural deficiencies. Counsel for the OFIS has informed Mohn's counsel that the OFIS is awaiting the outcome of this case before re-filing its administrative action. However, in the OFIS's prior administrative proceeding, it sought to revoke Mohn's insurance licenses based on the contention that the entry of an injunction predicated on allegations of fraud is a sufficient basis under the Michigan Insurance Code for revocation of an insurance license. (Motion for Partial Waiver Ex. A, OFIS Compl.).

**IT IS FURTHER ORDERED** that Defendants Keith Mohn and Mohn Asset Management are jointly and severally liable for $381,420 in disgorgement and $73,219 in prejudgment interest.

_____
s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Eric Phillips, Esq.
Ellen E. Christensen, Esq.
Jack Mazzara, Esq.
Harry P. Hellings, Jr., Esq.
Steven Ribiat
Celiza Braganco
Robert R. Gellar, Esq.