UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

KEITH MOHN, MOHN ASSET
MANAGEMENT, L.L.C., MOHN
FINANCIAL GROUP, L.L.C., J. PATRICK
KISOR, PDK INTERNATIONAL, INC.,
AGAVE, LTD, GENESIS TRADING
ASSOCIATES, L.L.C.,

    Defendants, and

NBC INVESTMENTS, INC., PCM, L.L.C.,
JASON MALKIN, GILBERT HOWARD,

    Relief Defendants.
_____/

Case No. 02-74634

Honorable Patrick J. Duggan

**OPINION**

On February 3, 2004, this Court entered a Stipulated Order of Receivership appointing Bradley J. Schram ("Receiver") as receiver over all the assets and affairs of Defendants Agave, Ltd. and Genesis Trading Associates, L.L.C., and Relief Defendants NCB Investments, Inc., and PDK International, Inc., and the monies transferred by EMAC Trading, L.L.C. to the Clerk of the Court, which are held in a Court Supervised Account. Presently before the Court are the Receiver's Amended Second Omnibus Recommendation for Treatment of Claims and objections. This Court held a hearing on December 14, 2005.

**I.**    **Background**

On July 23, 2004, this Court entered a Stipulated Order Establishing Claims Process, which set forth a procedure for the Receiver to solicit, analyze, and recommend treatment of investors' proofs of claim.

On December 15, 2004, following a hearing on the Receiver's First Amended Recommendation for Treatment of Claims and objections, the Court issued an Order distributing approximately $4.1 million to U.S. Agave investors, resulting in a 25.8% distribution on all allowed claims. The Court deferred ruling on the foreign investors' claims.

On September 16, 2005, the Receiver filed his Second Omnibus Recommendation for Treatment of Claims. Following the Second Recommendation, a number of the foreign investors filed objections. On November 22, 2005, the Receiver filed his Amended Second Omnibus Recommendation for Treatment of Claims. According to the Receiver's records, the total cash available for distribution is $7,050,572.45. (Receiver's Am. Second Recomm. at ¶3).[1]

## II. Objections

A. Plaintiff Securities and Exchange Commission (SEC)

First, the SEC objects to distributions with regard to 14 anonymous foreign investors

---

[1] In the Second Recommendation, the Receiver recommended that the Agave foreign investors and PDK investors receive the same initial distribution (25.8%) on all allowed claims as the Agave U.S. investors received. In the Amended Second Recommendation, however, the Receiver notes that there will be an additional $2,013,559.52 left for distribution. The Receiver seeks to distribute $1,844,005.57 of the remaining funds on a pro-rata basis to all of the Agave and PDK investors, which will result in an additional 5.421% distribution on all allowed claims. The Receiver recommends that the remaining balance of $169,553.95 be held in reserve for future expenses.

because the SEC contends that these investors are hiding behind asset protection vehicles in derogation of U.S. tax laws. The SEC argues that, as a matter of public policy, the Court should not allow distributions to these anonymous foreign investors because it will encourage the use of offshore asset protection vehicles.

In his Response, the Receiver notes that these 14 anonymous foreign investors provided him with sufficient documentation to satisfy the Claims Process Order requirements. In addition, although Plaintiff has cited to cases discussing asset protection vehicles in Nevis, West Indies, the Court is not convinced that an investor, who invests in an offshore asset protection vehicle in Nevis and loses money through a fraudulent scheme, should be denied any distribution in this Court.

Second, the SEC objects to the Receiver's recommendation to distribute $56,187.68 to Hanver Corporate Services ("Hanver"), based on Hanver's claim for reimbursement for services allegedly rendered to Agave, Ltd. Hanver is a trust company located in Nevis, West Indies. The SEC contends that Hanver actively participated in the fraudulent scheme.

In his Response, the Receiver contends that he personally observed Hanver's business operations, spoke with Hanver employees, and viewed Hanver's operations and maintenance of books and records relating to its role as a trust company. Moreover, the SEC has not set forth any evidence to support its claims that Hanver was involved in the scheme to defraud investors. Although the SEC contends that Hanver "backdated" some of the documentation in support of its investors' claims to make it appear that the investments were made before the Court entered its November 21, 2002 asset freeze order, the Receiver contends that the claims identified by the SEC were internal transfers of pre-existing investments rather than

new investments. (Receiver's Resp. to SEC's Obj. at ¶17).

Therefore, the Court accepts the Receiver's recommendation that these 14 anonymous foreign investors should be included in the distribution. Moreover, the Court accepts the Receiver's recommendation that Hanver should receive $56,187.68 for reasonable administrative services provided by Hanver.

### B. Edward and Evelyn Vogel Trust

In the objection, the Vogel Trust contends that the net investment listed in the Receiver's Second Recommendation incorrectly states that the Vogel Trust's investment in PDK was $80,000, instead of $90,000. The Receiver agrees and the Amended Second Recommendation correctly reflects that the Vogel Trust's net investment was $90,000 and the recommended 25.8% distribution is $23,220.

### C. Albert D. Venosa

In the objection, Venosa contends that the Second Recommendation incorrectly states that he received a disbursement of $20,000 of the $50,000 he invested in PDK. The Receiver agrees and the Amended Second Recommendation correctly reflects that Vogel's net investment was $50,000 and the recommended 25.8% distribution is $12,900.

### D. Michelle Zeidner

In the objection, Zeidner contends that her net investment in PDK was $28,836, not the $23,536 listed in the Second Recommendation. After reviewing the additional documentation submitted by Zeidner, the Receiver changed the amounts in the Amended Second Recommendation to reflect that Zeidner's net investment was $28,836 and the recommended 25.8% distribution is $7,439.69.

4

E. Jennifer Adams, Jack Burket, and William Cliff

Adams, Burket, and Williams were investors in Agave and had previously filed proofs of claim in this matter. They object to the Receiver's recommendation that the PDK investors should receive a pro rata share of the total cash available for distribution because PDK and Agave involved "two separate offerings of securities, using different offering materials, by two separate issuers." (Adams, Burket, and Williams Obj. at 5). Therefore, they argue that the Court should use a tracing method to distribute funds between Agave and PDK investors, under which PDK investors should only receive a distribution from the 10% reserve fund previously established to satisfy PDK claims.

In his Response, although the Receiver recognizes that tracing can be an appropriate method of equitable distribution under certain circumstances, in this case, the Receiver contends that a pro rata distribution is warranted. The Court agrees.

In *United States v. Durham*, 86 F.3d 70 (5th Cir. 1996), the Court employed the pro rata distribution method to partially reimburse defrauded investors. *Id.* at 71. Although some of the investors' funds could be traced, the district court distributed the funds pro rata because it determined it would be "the most equitable result." *Id.* at 72. The district court reasoned, "[i]n the instant action, all claimants stand equal in terms of being victimized by the defendant defrauders. The ability to trace the seized funds to [two of the investors] is the result of the merely fortuitous fact that the defrauders spent the money of the other victims first." *Id.* The Fifth Circuit Court of Appeals affirmed the district court's decision. *Id.* at 73; *see also S.E.C. v. Forex Asset Management LLC*, 242 F.3d 325, 331-32 (5th Cir. 2001) ("While it may have been permissible in *Durham* for the district court to have traced the

5

funds, and while it may have been permissible in the present case for the district court to have allocated all of the segregated funds to [certain investors], . . . . in both cases the district court, acting as a court of equity, was afforded the discretion to determine the most equitable remedy."); *Liberte Capital Group v. Capwill*, 229 F. Supp. 2d 799, 805 (N.D. Ohio 2002) (finding that tracing was not equitable because it would allow certain investors to "stand on the backs" of other investors).

Similarly, in this case, the pro rata method of distribution recommended by the Receiver will allow PDK and Agave investors to receive the most equitable share of the total cash available for distribution. Although PDK and Agave arguably involved two separate securities, all of the investors were victims of fraud perpetrated by Patrick Kisor. Therefore, the Court believes that the pro rata method of distribution is appropriate.

F. Dr. Errol Stern

In the objection, Dr. Stern contends that he should be entitled to distribution because, although he sold his stock in PDK to Dr. David Schneider pursuant to a settlement agreement with Dr. Schneider, paragraph 9 of the settlement agreement states that "[t]his provision does not operate as an assignment of release or of rights and claims against Patrick Kisor, individually." (Dr. Schneider's Resp. Ex. A, Settlement Agreement at ¶9). Dr. Stern argues that any funds attributable to the shares that emanated from Dr. Stern should be distributed equally between Dr. Schneider and himself.

Dr. Schneider, in his Response, argues that this would result in double recovery for Dr. Stern. Dr. Schneider notes that paragraph 3 of the settlement agreement states that the agreement "specifically covers all suits, claims, controversies, proceedings, causes of action

6

and matters relating to the Releases and Patrick Kisor, PDK International, LLC, PDK International, Inc., and/or Agave, as well as their predecessors, successors and assigns." (*Id.* at ¶3). Furthermore, paragraph 7 of the settlement agreement sets forth an acknowledgment releasing "any and all actions, claims, proceedings, matters, disputes and differences, known or unknown . . . which do now exist, may exist, or heretofore have existed between the parties . . . ." (*Id.* at ¶7). The Court recognizes that the settlement agreement may have preserved Dr. Stern's claim against Patrick Kisor, individually. However, because Dr. Stern no longer owns the PDK shares, he is not entitled to any distribution under the Receiver's Recommendation.

An Order consistent with this Opinion shall issue.

Date: December 16, 2005

                                                s/PATRICK J. DUGGAN
                                                UNITED STATES DISTRICT JUDGE

Copies to:
Eric Phillips, Esq.
Ellen E. Christensen, Esq.
Jack Mazzara, Esq.
Harry P. Hellings, Jr., Esq.
Steven Ribiat, Esq.
Celiza Braganco, Esq.
Bradley Schram, Esq.
Donald Mallory, Esq.
Jeffrey Bakst, Esq.